UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

    Momentum Consulting LLC                      Chapter 11
                                                                  Case No. 24-

                          Debtor.

## DECLARATION OF BEN MCLELLAN
## IN SUPPORT OF FIRST DAY RELIEF AND PETITION

I, Ben McLellan, hereby declare the following under penalty of perjury:

1.     I am Sole and Managing Member of the Debtor in the above-captioned proceeding.

2.     The Debtor was formed on June 23, 2020 and began doing business thereafter.

3.     The Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of Tile 11 of the United States Code (hereinafter the "Bankruptcy Code") on November 5, 2024.

4.     I submit this declaration to assist this Court and the parties-in-interest in understanding: (a) the circumstances leading to the commencement of this Chapter 11 case; (b) the business structure of the Debtor; and (c) the Debtor's prepetition debt.

5.     Additionally, I submit this declaration in support of: (a) the Debtor's petition for relief under the United States Bankruptcy Code; and (b) the "first day" relief the Debtor has requested pursuant to the motions and applications also filed on the date hereof.

6.     Except as otherwise indicated herein, all facts set forth in this declaration are based on my personal knowledge as Managing Member and President. If called upon to testify, I would testify competently to the facts set forth herein.

## Background

7.     The Debtor was formed in January, 2020.

8.  As of the Petition date, the Debtor employs myself. The rest of its personnel are paid as 1099 sub-contractors

9.  Debtor anticipates needing to maintain its workforce during the course of reorganization, but, as of the time of filing, is assessing its operations to identify ways to reduce overhead while maintaining revenues.

10. The Debtor's revenue is derived from fees earned from business consulting services.

11. As of the Petition Date, the Debtor's combined assets aggregate approximately $950,000.00, inclusive of claw backs and fraudulent conveyance actions. The Debtor's combined liabilities aggregate approximately $810,000.00, with approximately $620,000.00 in secured debt (not accounting for bifurcation or the undersecured position of said creditors), and $191,000.00 in general unsecured debt.

## Events Leading up to Chapter 11

12. In or around September 2024, the Debtor retained Boyle Legal, LLC ("Boyle") to assess its financial situation and make a recommendation as to whether filing for bankruptcy protection would be in the best interest of the Debtor, its clients, and its creditors. Ultimately, Boyle and the Debtor's management determined that seeking protection under chapter 11 of the Bankruptcy Code would be the best means for the Debtors to obtain relief from its numerous debts and allow it to successfully restructure its business debt payments through either reducing its business offerings, and thus reducing overhead, or through liquidating its business and reducing maximizing liquidation payouts to its creditors.

13. Debtor provides business consulting services to a number of various clients.

14. Historically, Debtor has had strong cashflow and revenues, grossing approximately six hundred and fifty ($650,000.00) in 2022 and approximately one million two hundred thousand

dollars ($1,200,000.00) in 2023. Through September, 2024, Debtor has grossed approximately six hundred fifty thousand dollars ($650,000.00).

15. Debtor's major financial concerns began in 2023, when I was approached to provide a loan in the approximate amount of $900,000.00.

16. At the time, it was articulated to me that the loan should be repaid by Fall, 2024.

17. The loan has not yet been repaid; however, I remain optimistic that same should be repaid shortly.

18. Notwithstanding my optimism, Debtor relied on both secured and unsecured loans to provide cashflow and reserves during the loan period.

19. Some of the loans had extremely aggressive repayment terms with some requiring multiple periodic repayments, monthly.

20. When the above-referenced loan is ultimately repaid, Debtor will be in a position to satisfy its debt load in full; however, to salvage ongoing operations, Debtor requires bankruptcy protection in order to decelerate repayment terms and preserve enough cashflow to allow for ongoing operations to continue without interruption.

21. Debtor's goals in this bankruptcy are to maintain its commercial contracts in order to cashflow positive, allow for enough "breathing room" to maintain operations while it navigates the restructuring process, and to provide a full dividend back to its creditors upon repayment of the loan.

22. Debtor believes based on its current workload, that it can successfully restructure; however, Debtor requires immediate bankruptcy relief in order to keep its creditors at bay while it formulates a plan of reorganization.

**The First Day Motions**

a.      **Application to Shorten Time**

11.     Pursuant to its Application to Shorten Time, the Debtor seeks an order allowing its First Day Motions to be heard on shortened notice.

12.     A shortened notice period is essential to maintaining the viability of the Debtor's business given the ongoing business obligations it has including: cash collateral, insurance, payroll, and banking practice considerations.

b.      **Motion of Debtor for Entry of Interim Order Authorizing Continued Use of Existing Bank Accounts**

13.     In the ordinary course of business, Debtor maintains its business bank accounts with Bank of America, N.A. and Bank of Greene County.

14.     I understand Bank of America, N.A. is an approved depository of the United States Trustee's office.

15.     I also understand that upon the filing of a petition for relief, a Debtor-in-Possession traditionally establishes all new Debtor-in-Possession bank accounts.

16.     I would respectfully request the Court allow the Debtor to temporarily maintain its current bank accounts as an immediate shutdown of same would interrupt significant services and financial transactions of the Debtor.

17.     Debtor proposes to maintain its bank accounts with Bank of America and Bank of Greene County for a period of 45-days post-petition in order to minimize interruption to operations and identify an appropriate DIP depository for post-petition operations.

18.     Debtor fears that interruption of this *status quo* will result in irreparable harm to the Debtor and its ability to maintain ongoing operations.

19. Many, if not all, of Debtor's customers pay Debtor through electronic funds transfers.

20. Should the Debtor need to shut down its existing accounts immediately, Debtor's workforce and ongoing concern vendors will most certainly be prejudiced by the delay in payment of their post-petition amounts due and Debtor's receipt of ongoing accounts receivables will be stymied.

   **c.   Motion to Utilize Cash Collateral**

24. At the time of filing, Debtor's cash and cash equivalents are purportedly encumbered by various entities.

25. Upon information and belief, Citizen's Bank is in first position with Debtor's collateralized cash and are owed approximately $162,450.00.

26. Upon information and belief, Hebron Savings Bank is in second position with Debtor's collateralized cash and are owed approximately $172,819.08.

27. Upon information and belief, TD Bank N.A. is in third position with Debtor's collateralized cash and are owed approximately $149,424.00.

28. Upon information and belief, Can Capital Inc. is in fourth position with Debtor's collateralized cash and are owed $133,563.00.

29. At the time of filing, Debtor's cash on hand at the time of filing is approximately $9,000.00. As such, Debtor has no unencumbered cash.

30. It is absolutely essential for Debtor's short- and long-term ongoing operations to be able to utilize its cash on hand and collected receivables in order to maintain post-petition obligations, including payroll, insurance payments, and operating costs/overhead.

31. Without access to this cash, Debtor cannot survive.

32. Debtor has proposed ongoing adequate protection payments to the Citizen's Bank.

33. As the junior secured creditors (Hebron, TD, and Can Capital) are completely unsecured, Debtor does not propose any ongoing adequate protection payments to those entities; however, Debtor acknowledges that those entities would be entitled to full repayment upon repayment of the $900,000.00 loan referenced above

34. As such, equity dictates that Debtor be able to utilize cash collateral to cover necessary and reasonable ongoing expenses, certain pre-petition prioritized expenses, and that the adequate protection proposed and articulated by Debtor in its motion to use cash collateral, is sufficient to protect the interests of Debtor's secured Creditors.

**d.    Application to Employ Boyle Legal**

34. Debtor desires to employ Boyle Legal, LLC to represent its interest in this Proceeding pursuant to the pre-petition retainer agreement entered into by and between Debtor and Boyle Legal.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:      November 5, 2024                /s/Ben McLellan
                                            Ben McLellan, CEO and Sole Member
                                            *Momentum Consulting LLC*
                                            Debtor and Debtor-in-Possession